## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 13-80530-CIV-MIDDLEBROOKS

MARTIN E. O'BOYLE,

      Plaintiff,

vs.

TOWN OF GULF STREAM,

      Defendant.

_____/

### ORDER

THIS CAUSE comes before the Court upon Plaintiff Martin E. O'Boyle's ("Plaintiff")
Verified Emergency Complaint/Motion for a Preliminary Injunction, and Temporary and
Permanent Restraining Orders and a Declaratory Judgment (DE 8) ("Motion"), filed June 5,
2013. Defendant Town of Gulf Stream ("Defendant") filed a Response (DE 15) on June 14,
2013. On June 19, 2013, the Court conducted a hearing on the Motion, and heard arguments
from counsel and testimony from Plaintiff. I have considered the Motion, Response, evidence
presented, arguments from both sides, and Plaintiff's testimony, and I am otherwise fully advised
in the premises. For the reasons set forth below and on the record during the preliminary
injunction hearing, I find that Plaintiff Martin E. O'Boyle is not entitled to a preliminary
injunction or temporary restraining order.

### I.    Background

Plaintiff is a resident of the Town of Gulf Stream, Florida (the "Town"), and has owned
his home since the early 1980s. His home is located on Florida's Intercoastal Waterway in the
Town. At the preliminary injunction hearing held on June 19, 2013, Plaintiff testified that his

dispute with the Town is rooted in an application for a variance on Plaintiff's home that was denied by the Town Commission.[1] Pursuant to the variance denial, Plaintiff composed several large paintings, described by Plaintiff as "satires" or "lampoons" criticizing Town officials, on the walls of his home. One painting is a horizontal rainbow-colored stripe covering the length of what appears to be a three-car garage. Another painting is a depiction of a green "Shrek"-like character labeled as "Vice Mayor" holding a leash attached to a donkey labeled "Mayor," with a bucktoothed blonde woman sitting atop the donkey. Emitting from the "Shrek" character is a speech bubble that reads, "I'm leading this ass to the Town Hall." (emphasis in original). A third painting depicts Tweedledee and Tweedledum labeled as Mayor Joan Orthwein (Dee) and Town Manager William Thrasher (Dum). The last painting depicts the hooded head of what appears to be a Klu Klux Klan member, with the words "Commissioner Thug" across the head, "this is a satire" and "stop the oppression" on each side of the head, and "Welcome to Gulf Stream" in big, red, bold letters below the head.[2] This last painting overlooks the Intercoastal Waterway and is clearly visible to boats passing by.[3]

On May 14, 2013, Defendant issued to Plaintiff a Statement of Violation and Notice of Hearing ("Violation") (DE 8-1) for paintings on the outside walls of Plaintiff's home.[4] The Violation charges Plaintiff with violating Town Code Sections 66-446, 66-141(1)(d) & (e), and 70-106(b)(3).[5] Section 66-446 is the Town's sign ordinance, which regulates the placement of

---

[1] According to Plaintiff, as a result of the variance denial, his home is uninsurable, and he is now forced to board up all structural openings (*i.e.*, windows).

[2] Needless to say, these paintings are of a political nature.

[3] According to Defendant, Plaintiff was not cited for this last painting, and states that Plaintiff has painted over this painting.

[4] The Violation only cites to "Sign painted on [south] side of dwelling & multi-colored stripes painted on [north] side." However, Plaintiff attaches photographs of four paintings as Exhibit 2. (*See* DE 8-2).

[5] The Violation notified Plaintiff that a hearing would be conducted on June 4, 2013, before the

signs on any property or building within the Town.  Section 66-141(d)-(e) provides that changes in exterior walls require a "Level 1 Architectural/Site Plan Review," which is a staff review and permit requirement.  Section 70-106(b) governs the approved paint colors for all walls of the principal building and associated accessory structures of a single-family home in the Town.[6]

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§2201, 2202, on May 23, 2013.  Plaintiff's "Complaint" is filed as a "Verified Emergency Complaint for a Preliminary Injunction, and Temporary and Permanent Restraining [Orders] and a Declaratory Judgment." (DE 8).[7]

## II.    Legal Standard[8]

The decision of whether to grant or deny a preliminary injunction is within the sound discretion of the district court.  *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002).  A district court may grant a preliminary injunction only upon a showing by the moving party that:

> (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

---

Town Stream Code Enforcement Special Magistrate.  According to Defendant, the Violation was not a "final decision" to apply a zoning ordinance to Plaintiff's property.  Rather, the hearing before the Special Magistrate would adjudicate the dispute.  However, per the Parties' agreement, this hearing was adjourned until settlement discussions were concluded.

[6] Upon the request of Defendant, and having heard no objection from Plaintiff, the Court grants Defendant's Request for Judicial Notice (DE 16) and takes judicial notice of all relevant Town Code Sections pursuant to Rule 201 of the Federal Rules of Evidence.

[7] Plaintiff's first filing was a "Verified Motion for a Preliminary Injunction, and Temporary and Permanent Restraining [Orders]." (DE 1).  However, since Federal Rule of Civil Procedure 3 requires a complaint to initiate a civil action, the Court required Plaintiff to file a complaint before considering a request for a preliminary injunction.

[8] I note that the same standards apply for granting a temporary restraining order as for granting a preliminary injunction.

*Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Id.* (quoting *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)). "Failure to show any of the four factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits." *Id.* The Eleventh Circuit has also stated that "preliminary injunctions [related to] legislative enactments . . . must be granted reluctantly and only upon a clear showing that the injunction before trial is definitely demanded by the Constitution and by the other strict legal and equitable principles that restrain courts." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990), *rev'd on other grounds*, 508 U.S. 656 (1993).

## III.   Discussion

After considering the four prerequisites to issuing a preliminary injunction, I find that Plaintiff has failed to meet his burden to show a substantial likelihood of success on the merits, and, as such, a preliminary injunction may not issue. First, to the extent that Plaintiff alleges that the Town codes are unconstitutional *as applied*, Plaintiff's claims are not ripe. For Plaintiff's claims to be considered ripe for adjudication, "the governmental entity charged with implementing the regulations must have reached a final decision regarding the application of the regulations to the property at issue." *Tari v. Collier Cnty.*, 56 F.3d 1533, 1535 (11th Cir. 1995) (quoting *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985)) (internal quotation marks omitted). A final decision is made when the "initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." *Williamson*

4

*Cnty.*, 473 U.S. at 193.  A notice of violation sent by a county code enforcement division is not a final decision to apply a zoning ordinance to a resident's property if the resident is made aware that no enforcement action will be taken until a legal opinion is rendered. *See, e.g., Tari*, 56 F.3d at 1536; *Pine v. Bd. of Cnty. Comm'rs of Brevard Cnty.*, No. 06-cv-1551-ORL-19JGG, 2006 WL 3091528, at *3 (M.D. Fla. Oct. 30, 2006).  In this case, the Notice of Violation clearly makes the imposition of any penalty conditioned upon a finding of a violation by the Special Magistrate. Moreover, it is evident that the Special Magistrate has not yet made a final decision (or even conducted a hearing) as to whether to apply the charged ordinances to Plaintiff's home.  Thus, Plaintiff's *as applied* challenges do not demonstrate a substantial likelihood of success on the merits at trial, as these claims are not yet ripe.

Second, as to Plaintiff's facial attack on the constitutionality of the paint ordinance (70-106), Plaintiff has failed to prove a substantial likelihood that this ordinance is facially unconstitutional.  Section 70-106 regulates the exterior wall colors of residences in the Town. This section appeals to the aesthetic interests of the town and "is intended to serve as a guide for preserving and perpetuating the unique residential character of the town." *See* § 70-3.  At this juncture, Plaintiff has failed to prove a substantial likelihood of prevailing on the facial attack as to section 70-106 as a content-based regulation.  On the other hand, Defendant has adequately demonstrated that, for purposes of my preliminary injunction determination, the ordinance is content-neutral. *See Hill v. Colorado*, 530 U.S. 703, 719-20 (2000) (noting that a statute is content-neutral if: (1) it is not a regulation of speech, but a regulation of the places where some speech may occur; (2) it was not adopted because of a disagreement with the message; or (3) the government's interests in the ordinance are unrelated to the content of the affected speech). Further, "[a] regulation that serves purposes unrelated to the content of expression is deemed

5

neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

Since I find this ordinance to be content-neutral for purposes of these preliminary proceedings, the ordinance will be upheld if it does not restrict speech substantially more than necessary to further a legitimate government interest, and leaves open adequate alternative channels of communication. *Id.* at 798-99. While Plaintiff argues that the entire Town Code disallows any speech whatsoever, this argument is fails, as the Town's Notice of Violation only cites to distinct provisions that, when taken together, may in fact allow for alternative methods of speech. Accordingly, Plaintiff has failed to meet his burden to show a substantial likelihood that he will succeed on the issue of whether this ordinance satisfies the test for intermediate scrutiny.[9]

Third, since I find that Plaintiff has not demonstrated a substantial likelihood of success on the merits as to the paint ordinance challenge, Plaintiff does not have standing to lodge a facial attack on the constitutionality of the sign or prior approval ordinances at this time. A plaintiff must meet three constitutional requirements for standing: "(1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *KH Outdoor, LLC v. Clay Cnty., Fla.*, 482 F.3d 1299, 1303 (11th Cir. 2007) (quoting *Granite State Outdoor Advertising, Inc. v. City of Clearwater, Fla.*, 351 F.3d 1112, 1116 (11th Cir. 2003)). At this stage in the proceedings, Plaintiff fails to prove the third prong – a likelihood that the injury will be redressed by a favorable decision. As stated in the Notice of Violation, Plaintiff faces a monetary penalty for each day that he does not remove the

---

[9] I also note that the Eleventh Circuit has held that a government entity may legitimately exercise its police powers to advance its aesthetic interests. *See Messer v. City of Douglasville, Ga.*, 975 F.2d 1505, 1510 (11th Cir. 1992) (citations omitted).

paintings on his home.[10]   Since the Court considers the Town's paint ordinance to be constitutional for purposes of these preliminary injunction proceedings, determining the constitutionality of the sign and prior approval ordinances now would be futile, as Plaintiff would still be prohibited from displaying his paintings under the Town's content-neutral paint ordinance.   Thus, any injury sustained by the unconstitutionality of the sign or prior approval ordinances would not be redressed by a favorable decision in this Court, since Plaintiff is still exposed to fines pursuant to the paint ordinance until he removes the paintings on his residence. *See Maverick Media Grp., Inc. v. Hillsborough Cnty., Fla.*, 528 F.3d 817, 821 (11th Cir. 2008); *KH Outdoor*, 482 F.3d at 1303-05.

## IV.    Conclusion

For the foregoing reasons, as well as those stated on the record at the June 19th preliminary injunction hearing, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Verified Emergency Motion for a Preliminary Injunction, and Temporary and Permanent Restraining Orders and a Declaratory Judgment (DE 8) is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 19th day of June, 2013.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:       Counsel of Record

---

[10] Plaintiff argues that the Town Code exposes him to the possibility of incarceration; however, the Notice of Violation and section 2-72 state otherwise.